

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed April 24, 2006                                                                    United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MONICA ANN RODRIGUEZ, | § | CASE NO. 05-50625-RLJ-7 |
| | § | |
| DEBTOR | § | |

**MEMORANDUM OPINION**

On March 21, 2006, hearing was held on the chapter 7 trustee's objection to claim of Security Bank, Idalou, Texas, and the trustee's application to approve sale nunc pro tunc. Both matters were consolidated for hearing, along with the continued trial of Security Bank's complaint objecting to dischargeability of the debtor's debt to the bank. On April 10, 2006, the Court issued its Memorandum Opinion and the order denying Security Bank's complaint seeking a determination of nondischargeability of the debtor's debt to the bank.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Opinion contains the Court's

findings of fact and conclusions of law. Bankruptcy Rule 7052.

**Background and Facts**

The facts that underlie the disputes raised by the trustee's objection to the claim of Security Bank and the trustee's application to approve sale nunc pro tunc are, for the most part, set forth in the Court's April 10, 2006, Memorandum Opinion. The Court hereby restates the pertinent facts from its prior Memorandum Opinion:

(1) <u>Facts from April 10, 2006 Memorandum Opinion</u>

On Monday, March 28, 2005, defendant Monica Rodriguez and her husband Jonathan Rodriguez signed a Note, Disclosure and Security Agreement (the "Note and Security Agreement") representing a $16,000 loan made to them by Security Bank. Pl. Ex. 7. The Note and Security Agreement provides for sixty monthly payments of $333.42 each, with the first payment being due May 12, 2005. To secure the loan, the Rodriguezes granted the bank a security interest in a 2004 Mazda sedan. On the same day, the Rodriguezes also signed a separate document which states as follows:

> Received from the Security Bank, Idalou, Texas, in trust the following specified documents described herein below, and in consideration therefore, we hereby agree to hold said documents in trust for said bank and as said bank's property and to deliver over to the said Security Bank or it's [sic] assigns the proceeds of the sale of said documents (or property) described herein below; the delivery herein being temporarily made to us for convenience only without notation or without giving us any title to the documents or the property they represent, except as a trustee and agent for said bank or to receive the proceeds thereof for the account of said bank. The said bank may at any time cancel this trust by taking possession of said documents or the proceeds of such of the same as may then have been sold, wherever, the said documents or the proceeds thereof may be found.
>
> We hereby agree to deliver said documents or to pay the proceeds arising from the sale of property to said bank on or before 3:00 o'clock, on the 12 day of April, 2005.

Pl. Ex. 8. This document, which the bank calls a "trust receipt," was intended to obligate the Rodriguezes to provide to the bank the certificate of title on the Mazda by April 12, 2005. The Rodriguezes actually purchased the Mazda on Friday, March 25, 2005. The purchase was financed with Bank of America. The Rodriguezes used the $16,000 in loan proceeds from Security Bank to pay off Bank of America and thereby effectively refinanced the debt on the Mazda.

The Rodriguezes did not deliver the title to Security Bank by April 12, 2005, as contemplated by the trust receipt. Bank of America released its lien against the Mazda on April 13, 2005. Pl. Ex. 11. On April 22, 2005, Troy Stegemoeller with Security Bank sent a letter to the Rodriguezes thanking them for making the first payment under the Note and Security Agreement and reminding them that the bank still needed "proper evidence of title on [the] car." Pl. Ex. 9. Around this same time, the Rodriguezes separated and the Mazda was left with Monica. On May 2, 2005, Troy Stegemoeller again on behalf of the bank, which had still not received evidence of title, sent a second letter to the Rodriguezes warning them that the debt under the Note and Security Agreement may be declared in default and the maturity accelerated because of their failure to provide the title. Pl. Ex. 10.

Monica Rodriguez filed her chapter 7 case on May 19, 2005. She testified that she actually received the car title a "week or two" prior to her bankruptcy filing. She also testified that upon receipt of title she called the bank and talked to a "Ms. Torres" who advised her to have the bank listed as lienholder on the title and delivered to the bank. Monica Rodriguez gave the title to her bankruptcy attorney, Jeff Conner. At some point after the bankruptcy filing, both the Mazda and the certificate of title were delivered to the chapter 7 trustee, Floyd Holder ("Holder"

or "trustee").

By letter dated June 9, 2005, from Monica Rodriguez to Troy Stegemoeller, she advised the bank that her husband Jonathan had left her on April 14 and that she could no longer afford the car. Floyd Holder, the trustee, having received the title and noting that it reflected there were no liens against the car, made plans to have the car sold at auction. Prior to the auction, however, the auctioneer contacted Holder to inform him that he had a "hot" buyer who was willing to pay $10,000 on the spot for the Mazda. Holder authorized the sale and the car was sold. Holder did not incur any expense, i.e., a commission, on the sale. He also did not obtain court approval for the sale. Both Monica and Jonathan Rodriguez are reflected on the title as owners of the Mazda. Pl. Ex. 11.

(2) Additional Facts

The Court takes judicial notice of the Court's docket for this case and Monica Rodriguez's schedules filed in this case. From her schedules and the docket entries, the Court gleans additional facts pertinent to the issues before the Court. Schedule B states that at the time Monica Rodriguez filed this bankruptcy proceeding, she owned three cars, a 1992 Nissan Pathfinder valued at $3,000, a 1997 Nissan Altima valued at $3,000, and the 2004 Mazda valued at $16,000. The schedules reflect that Monica Rodriguez has a community interest in each of the three cars.

Schedule C reflects that Monica Rodriguez claimed all three cars as exempt property under section 42.002(9) of the Texas Property Code. Schedule D lists Security Bank as a secured creditor with a claim of $15,780, fully secured by the Mazda. In her Statement of Intentions, Monica Rodriguez states she will surrender the Mazda to Security Bank.

No objections were filed to Monica Rodriguez's claim of exemptions. On August 4, 2005, Holder filed his application to employ Fletcher Auctioneers for the purpose of selling the Mazda. The application stated that he was holding the Mazda and that there was "no lien holder on the certificate of title." Notice of the application was provided to Fletcher Auctioneers, the United States Trustee, and Jeffrey H. Conner, counsel for the debtor.

**Discussion**

(1) Contentions of the Parties

The Court faces the following scenario: the Mazda has been sold and is apparently being driven by the purchaser; Holder, the trustee, is holding the $10,000 derived from the sale, the $10,000 constituting the only asset in this bankruptcy case; and, Security Bank is ostensibly left with no collateral. As noted above, the Court denied Security Bank's request that it declare Monica Rodriguez's debt nondischargeable. The Court found no fraud or deceit on Monica Rodriguez's part in the transaction. Holder contends that Security Bank is not a secured creditor because it does not have a perfected lien against the car. In response, Security Bank invokes the rights of Jonathan Rodriguez, asserting that he has a right to claim the Mazda as *his* exempt property and that as between the bank and Jonathan Rodriguez the bank's lien is valid. If given the opportunity, Jonathan Rodriguez would assume the payments on the car, the bank contends. Jonathan Rodriguez's rights have been ignored, asserts the bank, because he did not receive notice of the trustee's sale of the Mazda. The bank's argument in this regard is premised on its mistaken contention that Monica Rodriguez did not claim the Mazda as exempt. Indeed, none of the parties – Security Bank, the trustee, or Monica Rodriguez – acknowledge Monica Rodriguez's exemption claim.

Holder requests approval of his sale of the Mazda because the sale "has been questioned by Security Bank . . . ." As for the sale, Security Bank opposes nunc pro tunc relief for the very reason such relief is sought – because the trustee failed to provide notice thereby jeopardizing the bank's purported security interest in the car. Security Bank also contends that the sale should be set aside and, alternatively, if the sale stands whether approved or not, the trustee did not obtain adequate consideration for the car.

The Court addresses first the issue of whether the trustee's sale should be approved nunc pro tunc, resolution of which instructs the Court's consideration of the second issue of whether the bank's claim should be disallowed as a secured claim.

(2) <u>Approval of Sale of the Mazda Nunc Pro Tunc</u>

By requesting relief nunc pro tunc, the trustee is requesting nothing more than that the Court sanction his sale of the Mazda after the fact.[1] The Court cannot do this for several reasons, the most obvious of which is the trustee's failure to provide notice of the sale. Section 363(b) of the Bankruptcy Code directs that a trustee, *after notice and hearing*, may sell, other than in the ordinary course of business, property of the bankruptcy estate. 11 U.S.C. § 363(b). A trustee's liquidation of estate assets in an individual consumer case is not an ordinary course of business sale. No "business" of the debtor is being operated. It is not necessary to spell out the procedures that would satisfy the notice and hearing requirement as they are clearly set forth in the Code and the rules. The trustee provided no notice in this case; the mere fact that he requests nunc pro tunc relief admits of a failure to follow clearly established procedures.

---

[1]Nunc pro tunc orders are typically entered to correct ministerial or clerical errors. This Court also entertains nunc pro tunc relief when it is apparent that approval of some action would have been granted routinely.

Even if the trustee had provided proper notice of the sale, the Court could not approve the sale. As noted, Monica Rodriguez claimed the Mazda as exempt property. In addition, her stated intention to surrender the Mazda to Security Bank can certainly be considered consistent with her exemption claim. This would have allowed her husband, Jonathan Rodriguez, to make arrangements with the bank for his retention of the Mazda. The actions of Monica Rodriguez and her attorney in turning over the Mazda and the title to the trustee contradicts her exemption claim. The trustee perhaps assumed the Mazda was not exempt or that Monica Rodriguez had somehow waived her exemption claim. At the very least, however, the trustee should have proceeded cautiously in disposing of the Mazda, which, again raises the necessity of notice.

Recognizing Monica Rodriguez's exemption claim protects the rights of Jonathan Rodriguez, as well.[2] Section 541( a)(2) of the Bankruptcy Code, which declares that community property is property of the bankruptcy estate, effectively eliminates the rights of a non-debtor spouse to manage and control community property. *See* 5 COLLIER ON BANKRUPTCY ¶ 541.13(3) (15th ed. rev. 2004). Jonathan Rodriguez is one of the owners of the car. The Code provides that community property is property of the estate which the trustee is to administer for the benefit of the debtor's creditors and creditors of the non-debtor spouse. *See* § 101(7) (definition of community claim) and § 101(10)(C) (definition of creditor includes creditor that holds a community claim). In this Court's view, it is consistent with the Code's treatment of community property and community claims to recognize that the filing spouse's exemption claims are also

---

[2] Monica Rodriguez filed her schedules (and claim of exemptions) on May 19, 2005, the date she filed this chapter 7 case; her section 341 meeting of creditors was held and concluded on July 18, 2005. Objections to exemptions must be filed within thirty days of the creditors' meeting. Rule 4003(b) FED. R. BANKR. P. If no objections are filed, the claimed exemptions are deemed allowed. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-44 (1992); *Matter of Sadkin*, 36 F.3d 473 (5th Cir. 1994).

binding on the non-filing spouse. *See In re DeHaan* 275 B.R. 375, 381 (Bankr. D. Idaho 2002) ("There is nothing in the Code that allows non-debtors, dependents or otherwise, to assert in the bankruptcy an exemption personal to such non-debtors. Even the limited exception of § 522(l) only allows the dependent to assert an exemption on behalf of the debtor.").[3] The trustee here was aware of Jonathan Rodriguez's interest in the Mazda as his interest was reflected on the certificate of title that was delivered to the trustee. That, along with the exemption claim, was sufficient to alert the trustee.

Lastly, it appears that the consideration received was less than fair value for the Mazda. While this Court gives great deference to the decisions of trustees in selling property, such deference assumes proper notice of the sale was provided and that other parties were thereby made aware of the sale. The trustee sold the Mazda approximately four months after it was purchased by the Rodriguezes. Security Bank advanced $16,000 for the purchase of the car, which is the value stated for the car by Monica Rodriguez in her schedules. The amount advanced by a lender for the purchase of a car is typically on the low end of the range of values for a car.[4]

(3) <u>Objection to Security Bank's Secured Claim</u>

The foregoing analysis by the Court concerning the sale of the Mazda also dictates the Court's conclusions concerning the trustee's objection to Security Bank's secured proof of claim.

---

[3]Section 522(l) explicitly gives a dependent of the debtor the right to file the list of claimed exemptions if the debtor fails to file such list. The debtor's spouse constitutes a "dependent" of the debtor. Id.

[4]The Court recognizes that various values are placed on cars depending upon the circumstances concerning the sale of a car. These would include retail value, wholesale or liquidation value, trade-in value, and loan value. There is no evidence before the Court concerning the condition of the car at the time the trustee sold the car, however. Suffice it to say that notice of the sale would have alleviated the Court's concerns regarding the consideration obtained on the sale.

Given Monica Rodriguez's claim of exemption to the Mazda and that no objection was filed to the exemption, the car left the bankruptcy estate. *See* 11 U.S.C. § 522(b); *In re Reed*, 184 B.R. 733 (Bankr. W.D. Tex. 1995). Under such circumstances, trustees typically object to the creditor's secured proof of claim on the basis that the creditor recovers its claim against the exempt property that secures its claim. These types of objections are routinely granted by the Court. However, this case is complicated by the fact that the trustee sold the exempt property. Given the evidence before the Court, it is not clear whether the sale can be set aside or not. As the trustee did not obtain approval for the sale and Jonathan Rodriguez was listed as an owner of the car on the certificate of title, the Court fails to see how good title was passed to the purchaser. Although Security Bank has requested that the sale be set aside, the Court cannot, in this proceeding, direct a return of the car as the purchaser is not a party to this action. As it presently stands, the car is gone. The bank's lien should, therefore, under Texas state law, extend to the proceeds of the sale, i.e., the $10,000 held by the trustee. TEX. BUS. & COM. CODE §§ 9.203, 9.315.[5] That Security Bank's lien against the car is unperfected as it was never reflected on the certificate of title does not destroy the bank's security interest. *See In re Hancock*, 126 B.R. 270 (Bankr. E.D. Tex. 1991). The bank's secured claim for $10,000 will be allowed without prejudice to reconsideration of such claim in the event the sale of the Mazda is set aside in other

---

[5]The trustee also contended that the trustee's position as a judicial lien creditor under section 544 of the Bankruptcy Code voids the bank's security interest in the Mazda. There are two problems with the trustee's contention. First, section 544 requires that an adversary proceeding be brought to set aside a security interest, which has not been done. At the hearing on the matter, the trustee contended that all that he was aware of was that the car was turned over to him along with the title. However, as noted, the debtor's schedules reflect Security Bank as a secured creditor with a lien against the car, and provide for surrender of the car to Security Bank. Second, the unobjected to exemption claim theoretically removes the car from the bankruptcy estate. The trustee should have no interest in administering an asset (and thereby seeking to set aside a lien against an asset) that constitutes exempt property.

proceedings before this Court. The Court will prepare an order consistent with this Memorandum Opinion.

### End of Memorandum Opinion ###